MASON, Appellee and Cross–Appellant,

v.

SWARTZ, Appellant and Cross–Appellee, et al.

[Cite as *Mason v. Swartz* (1991), 76 Ohio App.3d 43.]

Court of Appeals of Ohio,
Ottawa County.

No. 90–OT–047.

Decided Aug. 30, 1991.

44

*Mark J. Ellis,* for appellee and cross-appellant.

*Dale A. Kline,* for appellant and cross-appellee.

*Per Curiam.*

This is an appeal from an Ottawa County Common Pleas Court judgment which reformed the deed to property owned by plaintiff-appellee/cross-appellant ("appellee"), David C. Mason, granted a writ of ejectment requested by defendant-appellant/cross-appellee ("appellant"), Theodore L. Swartz, and ordered third-party defendants, Gladys and Frank Wuebbling, to pay the court costs of the action and the costs of a survey conforming to the new description in the deed.

Appellant brings this appeal and presents the following assignments of error:

"I. The Court erred in reforming Plaintiff's deed.

"II. The Court erred in failing to sustain Defendant's Motion in Limine.

"III. The Court erred in its final entry which did not incorporate all of the terms of the decision of the Court filed October 18, 1989.

"IV. The Court erred in failing to award Defendant Swartz damages against Plaintiff Mason after a finding of encroachment on Defendant Swartz' property."

Appellee asserts two cross-assignments of error:

"1. Although the Court correctly decided that Plaintiff Mason was entitled to a reformation of his deed description, the Court's ruling on the location of the new physical boundaries was against the manifest weight of the evidence.

"2. Once the Court finds that Plaintiff Mason's improvements encroach upon Defendant Swartz's property and must be removed, Plaintiff Mason should be awarded damages from Third Party Defendants Wuebblings for the diminished value of the real estate and the expenses of removing the encroachment to comply with the Court Order."

The record of this case reflects these relevant undisputed facts: Robert Evans and Valerie Evans owned a large tract of property on Middle Bass Island in Ottawa County, Ohio. In 1967, the Evanses transferred title to a portion of this property, consisting of 0.35 acres "more or less," to the Wuebblings. On the east, this piece of property (Lot 6) was bordered by Lake

Erie. On the north, west, and south, it was surrounded by property still owned by the Evanses. An established lane or roadway across the Evanses' property from the north permitted the Wuebblings access to their land. This roadway was and is at the western side of the Wuebbling–Mason property. An easement or right-of-way allowing the Evanses use of the lane on the Wuebbling property and any others which might be established in the tract was reserved in the Wuebbling deed.

In 1968, the Evanses conveyed the property surrounding the Wuebbling land to appellant. Specific exceptions were set forth in appellant's deed. One of these exceptions was ".368 acres conveyed to F. Wuebbling, et al., by deed recorded in Volume 224, Page 636, Ottawa County Records of Deeds being known as sub-lot 6 of a proposed subdivision." Neither the Evanses nor the Wuebblings ever had their respective properties surveyed.

The Wuebblings constructed a garage on their property and placed a double-wide mobile/manufactured home between the garage and the shoreline. Rising lake levels and heavy storms in 1972 and 1973 forced the Wuebblings to move the home to a location north and almost parallel to the garage with the rear of their home extending west of the garage. Appellant did not develop the surrounding property at this point in time.

In 1980, appellee purchased Lot 6 from the Wuebblings. He, too, never had a survey performed either prior to or after the purchase. The description of the property in appellee's deed is identical to that of the Wuebbling deed. Appellee received a title guaranty issued by the Lawyers Title Insurance Corporation from the Wuebblings at the closing on the property. Subsequent to the purchase, appellee moved a deck or porch on the mobile home to the rear of the residence and after obtaining a health permit, installed a privy, to the rear of the garage.

During the mid 1980s, appellant began developing his land as a campground. In late 1985, appellant heard that appellee's building encroached on his property and, therefore, had a survey performed by David A. Brunkhorst. Brunkhorst employed the description in appellee's deed in determining the boundaries of Lot 6. This survey revealed that appellee's mobile home, including the porch, encroached over thirty feet west on appellant's property and approximately ten feet north on appellant's property while the garage encroached approximately fourteen feet west on appellant's property.

In December 1985, a letter was mailed to appellee informing him of the encroachment. In March 1986, appellant sent appellee a second letter, which stated that the encroachments would be removed by the "most effective means." On March 31, 1986, appellee filed a complaint asking for a preliminary and permanent injunction. On April 17, 1986, appellant filed an answer

and a counterclaim requesting a writ of ejectment and damages (fair rental of the land encroached upon). Appellee answered the counterclaim and raised, as one of his defenses, a demand for relief by means of reformation of his deed. Appellee also asserted a cross-claim against the Wuebblings for breach of warranty, breach of the covenants of seisin and quiet enjoyment, and misrepresentation. Appellee asked for any damages incurred for the removal of the encroachments (if so found) and the loss in the fair market value of his property. The Wuebblings answered. On May 16, 1986, a preliminary injunction was issued.

In September 1987, appellee had a survey of his property prepared by Carl A. Feick. The Feick survey, based on the deed description, disclosed the same degree of encroachment of appellee's garage and home onto appellant's property. In addition, this survey included appellee's privy which, according to the description in appellee's deed, was approximately forty-three feet west of appellee's property line.

To avoid repetition, further facts material to the disposition of this cause and the proceedings below shall be revealed in our consideration of the appropriate assigned error.

Appellant's first assignment of error and appellee's first cross-assignment of error shall be considered together.

In his first assignment of error, appellant asserts that the trial court erred in reforming the deed to the Mason property. In his first cross-assignment of error, appellee contends that, while the trial court was correct in deciding that his deed was susceptible to reformation, the court's determination of the physical boundaries of his property was against the manifest weight of the evidence.

Appellant initially contends that appellee could not request the reformation of his deed because appellee was not a party to the conveyance between the Evanses and the Wuebblings or the conveyance between the Evanses and appellant.

Equity will permit the reformation of a written instrument not only as between the original parties but also as to parties in privity with them. *Broadwell v. Phillips* (1876), 30 Ohio St. 255, 259; *Berardi v. Ohio Turnpike Comm.* (1965), 1 Ohio App.2d 365, 370, 30 O.O.2d 385, 388, 205 N.E.2d 23, 27. As successors in interest to the Wuebblings, appellee was in privity with the grantors, the Evanses. *Id.* at 370, 30 O.O.2d at 388, 205 N.E.2d at 27. Accordingly, appellee could bring an action for the reformation of his deed.

Appellant next asserts that appellee pled reformation as an affirmative defense rather than a claim for relief. Appellant therefore argues that the

granting of the reformation of the deed was inappropriate because appellee never amended his complaint to include reformation in his demand for relief and the trial court never entered a finding that justice required that the affirmative defense be treated as a counterclaim.

It is evident from the record of this case that appellee's entire case against appellant rested upon the reformation of his deed. Appellant was fully cognizant of this fact and never objected. Appellant had a fair opportunity to offer evidence on the theory of reformation of the deed and appellant extensively cross-examined appellee's witnesses on the issues relating to reformation. Under these circumstances, it was within the discretion of the trial court to treat the "affirmative defense" as an unpleaded claim tried by the implied consent of the parties. *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 45–46, 5 OBR 99, 102–103, 448 N.E.2d 1159, 1163. See, also, *Moser v. Moser* (1982), 5 Ohio App.3d 193, 194, 5 OBR 427, 428, 450 N.E.2d 741, 742. After a review of the record of this case, we can find no abuse of discretion on the part of the trial court.

Finally, under this assigned error, appellant maintains that the trial court erred in reforming the deed because mutual mistake was not proven.

Reformation of an instrument is an equitable remedy whereby a court modifies the instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties. *Greenfield v. Aetna Cas. & Sur. Co.* (1944), 75 Ohio App. 122, 128, 30 O.O. 427, 429, 61 N.E.2d 226, 229. In order to correct the description of a deed on the ground of mutual mistake, the proof that both parties were mistaken as to what was being conveyed must be shown by clear and convincing evidence. *Stewart v. Gordon* (1899), 60 Ohio St. 170, 53 N.E. 797. See, also, *Castle v. Daniels* (1984), 16 Ohio App.3d 209, 212–213, 16 OBR 224, 228, 475 N.E.2d 149, 153.

Appellant asserts that the Wuebblings did not testify at trial. Therefore, he concludes that there was no way to determine that both parties were mistaken as to the boundaries of Lot 6. If this assertion were held to be the rule, a deed could never be reformed in a case where one of those parties was deceased or otherwise unavailable. Thus, in an action for reformation, the intention of the parties can be discovered through parol evidence. *Clayton v. Freet* (1860), 10 Ohio St. 545, 546; *Kevern v. Kevern* (1917), 11 Ohio App. 391, 394. As stated in *Castle, supra,* 16 Ohio App.3d at 212, 16 OBR at 227, 475 N.E.2d at 152, "concerning the conduct of the parties, any course of dealing between them, and the method of handling the specific transaction in question are entitled to great weight in determining the ultimate facts; to wit, the agreement. *Neff v. Ulman* (Oct. 23, 1981), Darke App. Nos. 1027 and 1028,

unreported [1981 WL 2582] (citing *Haller v. Holthouse* [App.1952], 68 Ohio Law Abs. 156 [121 N.E.2d 662])."

In this case, testimony at trial disclosed the following facts.

In the summer of 1967, the son of the original grantors, Leonard Thomas Evans, helped his father prepare a plat of a proposed subdivision to be built on the Middle Bass Island property. This unrecorded plat indicated that Lot 6 had been sold to the Wuebblings. The entire tract owned by Evans was platted for fifty-four separate lots and proposed roadways permitting ingress and egress from the subdivision. In 1967, a north-south roadway provided access to Lot 6 and six other proposed lots fronting the lake. Leonard Evans testified that it was his father's intention to move the roadway west at an angle so that each lot, including Lot 6, would be eighty feet wide, from north to south, and two hundred feet in length, from west at the center line of the roadway to the "beach," *i.e.*, the Lake Erie shoreline. Gerald Sheller, a neighbor and friend of the Evanses, also testified that the water-front lots were to be eighty feet by two hundred feet and that the roadway was shifted to the west to provide the two-hundred-foot frontage. An aerial photograph taken by the Ohio Department of Natural Resources in 1968 depicted the old roadway as it ran straight north and south and the new roadway angling off to the west before it reached appellee's property. A like photograph in 1973 showed only the new roadway, which started at the southeast corner of the property north of Lot 6 and headed on a diagonal to the southwest, away from Lake Erie. Leonard Evans, as well as appellant, appellee and Sheller, testified that the same roadway provides access to Lot 6 at the present time.

Evans also noted that he and his father made their measurements for the plat starting at the southern border of the tract. The description in the deed begins at the northern boundary. In comparing the description with the location of Lot 6 as his father had intended, Evans testified that the two did not coincide and that, if the description in the deed were true, some of Lot 6 was located, even at the time of the original conveyance in 1967, in Lake Erie. Testimony from the various witnesses and from exhibits also produced the following salient facts:

(1) It is undisputed that the first structure erected by the Wuebblings on Lot 6 was the garage, which was determined by the 1985 and 1987 surveys to encroach upon appellant's property by approximately fourteen feet.

(2) The distance from the roadway to the shoreline in the 1968 aerial photograph was "182 to 183 feet." After the storms and rising lake levels occurred in the early 1970s, the distance, as calculated from the 1973 aerial photograph, was approximately one hundred twenty-one feet. The distance in

the 1968 photograph supports the proposition that Robert Evans intended each proposed lot to be two hundred feet from west to east. The second photograph depicts lost "frontage" due to rising lake levels.

(3) According to the deed description, the western boundary of appellee's property would be almost thirty feet from the roadway. No easement was granted to the Wuebblings or appellee in their respective deeds to access the roadway. Instead, a ten foot right-of-way is reserved to the grantor and all other persons who may acquire land in the tract "from or through the westerly portion" of appellee's lot.

(4) As Robert Evans's health failed, he was forced to abandon his proposal for a subdivision and the bulk of his property was sold to appellant in 1968. However, appellant's deed contains specific exceptions for property sold pursuant to Evans's original plat, reserves easement rights on future road-ways, and reserves a right to a common beach area for use by all owners of the land within the tract.

(5) All proposed waterfront lots (1–7) were at a slight angle to the Sheller property to their north. That is, the north-south boundary lines of Lots 1–7 ran slightly southeast and were perpendicular to the access road.

(6) Appellee testified that he was led to believe, prior to the purchase, that the property line for his lot went to the roadway. He was also told that about eighty feet had been lost to the east side of the property due to the rising lake levels and storm damage.

Thus, the record of this case is replete with evidence of the course of conduct of the parties and their dealings. The fact that the Wuebblings did not testify does not mean that mutual mistake at the time of the conveyance could not be ascertained by means of this evidence. Our review of the record indicates that clear and convincing evidence was offered at trial to demonstrate that both the grantors and grantees were mistaken as to what was being conveyed. Nevertheless, the trial court's reformation of the deed is premised upon a finding of "material" mistake rather than "mutual" mistake. This finding is based upon the obvious error in the Wuebbling deed which reserves a right-of-way to the grantor over the westerly portion of Lot 6 but describes a piece of property which does not connect to the access roadway. However, the court could not reform appellee's deed upon the finding of material mistake alone. *Broadwell, supra,* paragraph two of the syllabus; *Spitzer Hardware & Supply Co. v. Dever* (1967), 11 Ohio App.2d 6, 8–9, 40 O.O.2d 4, 5, 227 N.E.2d 660, 662. Because the trial court reached the correct result based upon the evidence before it, we order that finding of fact No. 20 be vacated. We specifically find that clear and convincing evidence was offered at trial to establish mutual mistake and that the trial court thereby

had the authority to reform appellee's deed. Appellant's first assignment of error is found not well taken.[1]

In his first assignment of error on cross-appeal, appellee contends that the manner in which the trial court reformed appellee's deed is against the manifest weight of the evidence.

The deed was ordered to reflect the following boundaries:

"1. The north and south lines of said parcel shall be as located on the Brunkhorst survey (Defendants Exhibit K);

"2. The west line of said parcel shall be located ten feet (10′) west of the east line of said right of way (lane); and

"3. The east line shall be the low water mark of Lake Erie as now located."

This reformation does not eliminate an approximately ten-foot encroachment by the mobile home at the northern boundary of appellant's property.

 Judgments supported by competent, credible evidence going to all essential elements of a cause cannot be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. In this case, the reformation of the deed as determined by the trial court is not supported by competent, credible evidence. That is, there is no evidence that the parties intended the north and south boundary lines be located as they are on the Brunkhorst survey or that the east line be located at the low water mark of Lake Erie as it is today. To the contrary, clear and convincing evidence was offered below to demonstrate that the western boundary of appellee's property is the center line of the roadway. Clear and convincing evidence was also offered to establish that the north and south boundary lines of that property were perpendicular to that roadway. Testimony from Feick and a review of his proposed description of appellee's property shows that this description comes "close," that is, comports with the intent of the parties to the original grant. In light of this credible evidence, we can only conclude that the lower court's description does not reflect the intent of the original parties to the conveyance of Lot 6 and is, therefore, against the manifest weight of the evidence. *Id.* Accordingly, appellee's first cross-assignment of error is found well taken. Pursuant to App.R. 12(C), we vacate the trial court's judgment as to the description in

---

1. Appellant argues for the first time in his reply brief that he was a bona fide purchaser without notice. Appellant waived any right to raise this issue on appeal by failing to assert it below. *State v. Awan* (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 201, 489 N.E.2d 277, 279. See, also, *Foley v. Lipka* (Nov. 3, 1988), Highland App. No. 673, unreported, 1988 WL 118701.

appellee's deed. The boundaries of appellee's property shall be those proposed in appellee's Exhibit 19 and Exhibit 20.

In his second assignment of error, appellant contends that the trial court erred by overruling his motion *in limine.* In that motion, filed May 25, 1989, appellant requested that the court preclude appellee from presenting any witnesses or exhibits which were not disclosed to appellant prior to October 24, 1988, the date the trial first commenced. In particular, appellant asked the court to bar any evidence and testimony arising from supplemental responses to discovery filed by appellee on December 2 and 7, 1988, and March 20, 1989.

Appellant presented his case in chief on October 24 and 25, 1988. Appellee presented his defenses to that cause of action and his claim against the third-party defendants, the Wuebblings. Thus, in this case, the "defendant" was permitted to proceed, by stipulation, first on his claims for ejectment and damages. The "plaintiff" then presented his defenses to those claims and proceeded on his cross-claim for breach of warranty and misrepresentation as against third-party defendants. Trial was adjourned until January 5, 1989. Prior to that date, appellant requested a continuance for medical reasons. That continuance was granted and the trial was reset for May 25, 1989. On May 25, 1989, appellant filed his motion *in limine.* It was overruled by the court below, and appellee presented his case in chief on his claim for injunctive relief and reformation of the deed.

Appellant's motion was directed to the addition of a new witness, Leonard Thomas Evans, in appellee's case in chief, the recall of appellee's expert witness, Carl Feick, and presentation of certain exhibits, consisting of copies of an unrecorded plat and surveys performed by Feick. Appellant never renewed his motion *in limine* as to any of the testimony of Feick and Evans or the exhibits at trial.

A trial court has the discretionary authority to control the mode and order of proof. Evid.R. 611(A); R.C. 2315.01; *Cities Serv. Oil Co. v. Burkett* (1964), 176 Ohio St. 449, 27 O.O.2d 424, 200 N.E.2d 314, paragraph two of the syllabus. In the case at bar, trial was divided into two separate and distinct parts for ease of presentation of evidence in support of each of the parties' claims. At the time that appellee filed his notices of "supplemental responses," trial had commenced but he had not presented his case in chief. Therefore, those responses were not, in the usual sense, made as part of discovery but were evidence proposed for use in appellee's case in chief. Upon the filing of appellant's motion *in limine,* the trial court was confronted with a question of admissibility and made a preliminary ruling that the proposed evidence was

admissible. Accordingly, the issue before this court is whether the trial court erred in admitting this evidence.

 The admissibility of evidence is generally a matter within the sound discretion of the trial court. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008. Greater latitude is permitted in evidentiary matters where a case is tried to a judge without a jury. *Clarke v. Clarke* (App.1963), 188 N.E.2d 619, 622. It is presumed that the court will consider only proper evidence in reaching its decision. *Swigart v. Swigart* (App.1953), 65 Ohio Law Abs. 582, 591, 115 N.E.2d 871, 879. Evidentiary rulings cannot be reversed by a reviewing court unless an abuse of discretion is shown. *Calderon, supra,* 70 Ohio St.2d at 222, 24 O.O.3d at 325, 436 N.E.2d at 1012.

 A motion *in limine* is a motion directed to the inherent discretion of the trial court judge to prevent the injection of prejudicial, irrelevant, inadmissible matters into trial. *State v. Grubb* (1986), 28 Ohio St.3d 199, 200–201, 28 OBR 285, 287, 503 N.E.2d 142, 145. Generally, the grant or denial of such a motion is not a ruling on the evidence. *Id.* at 201, 28 OBR at 287, 503 N.E.2d at 145. Rather, it is a preliminary interlocutory order and the objection must be raised again at trial in order to permit the court to consider the admissibility of the evidence in its actual context. *Id.* at 202, 28 OBR at 288, 503 N.E.2d at 145. Therefore, failure to object to the evidence at trial waives the right of the objecting party to raise the court's ruling on the preliminary motion as error on appeal. *Id.* at 203, 28 OBR at 289, 503 N.E.2d at 146.

In this case, appellant never renewed his objections to the offered evidence at trial. Therefore, it would appear that he waived his right to assign the court's ruling on his motion *in limine* as error on appeal. Nonetheless, the Supreme Court of Ohio has permitted a party to employ a motion *in limine* to seek exclusion of the testimony of an expert witness as a sanction in cases where a violation of Civ.R. 26(E)(1)(b) has occurred, *i.e.,* in cases where the name of an expert witness has not been timely disclosed, *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 12 OBR 73, 465 N.E.2d 444, syllabus, or the subject matter of the expert's testimony has not been timely disclosed, *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 368, 28 OBR 429, 429, 504 N.E.2d 44, 44–45. In *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248, the trial court granted a motion *in limine* to exclude expert testimony as a result of the defendant's violation of Civ.R. 26(E)(1)(b). The defendant never raised the issue during the course of the trial. However, the ruling was subsequently raised on appeal. At 19

Ohio St.3d at 86, 19 OBR at 126, 482 N.E.2d at 1251, fn. 5, of *Huffman, supra,* the court found that:

" * * * [I]n this case appellants' 'motion in limine' expressly requested a final court order preventing introduction of the challenged evidence during the trial. Given the fact that the hearing on the motion was held immediately prior to trial, and that the motion was sustained, we believe that under the circumstances of this case appellee's failure to object did not constitute a waiver of its challenge. Accordingly, it is proper in this case for appellate review to consider the merits of the trial court's ruling. Cf. *State v. Davidson* (1985), 17 Ohio St.3d 132 [17 OBR 277, 477 N.E.2d 1141], syllabus."

This rule has not been extended to any area except untimely disclosure of expert witnesses. Accordingly, appellant's failure to renew his motion as to the new witness and exhibits waives his right to raise the preliminary ruling on this evidence on appeal. With regard to the testimony of Carl Feick, the issue is whether the subject matter of his testimony constituted surprise. *Shumaker, supra,* 28 Ohio St.3d at 370, 28 OBR at 431, 504 N.E.2d at 47. In other words, was appellant provided with an opportunity to prepare for an effective cross-examination of this expert witness? *Id.* at 370–371, 28 OBR at 432, 504 N.E.2d at 47. The "supplemental responses" were filed well in advance of the date that appellee presented his case in chief. Appellant had ample time, therefore, to prepare for cross-examination of Feick on the new subject matter and did, at trial, conduct an extensive cross-examination as to the new survey completed by Feick and the source of information for that survey. Accordingly, we find that the court did not abuse its discretion by allowing Feick to testify. Appellant's second assignment of error is found not well taken.

In his third assignment of error, appellant contends that the trial court erred by signing a judgment entry which did not incorporate all of the terms of the trial court's decision filed on October 18, 1989. The decision filed on October 18, 1989, was not a final order. *St. Vincent Charity Hosp. v. Mintz* (1987), 33 Ohio St.3d 121, 515 N.E.2d 917. Therefore, the trial court could modify, or even completely eliminate, any part or all of that decision at any time prior to the entry of final judgment. *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379, 21 O.O.3d 238, 239, 423 N.E.2d 1105, 1106, fn. 1. Accordingly, the court below was free to alter the provision of the October 18, 1989 decision and cannot be faulted for any alteration or modification of the same in its final judgment entry. Appellant's third assignment of error is found not well taken.

In his fourth assignment of error, appellant asserts that the trial court erred by not awarding him damages for the encroachment. In appellee's second cross-assignment of error, he contends that the trial court erred by not awarding him damages against the third-party defendants, the Wuebblings. Although our disposition of appellee's first cross-assignment of error renders these contentions moot, we note that neither party offered specific evidence of damages, but, rather, adduced testimony consisting only of speculation as to those damages. For these reasons, appellant's fourth assignment of error and appellee's second cross-assignment of error are found not well taken.

The judgment of the Ottawa County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded to that court for entry of judgment on the description of the Mason property in appellee's reformed deed. That description shall conform to the description proposed in plaintiff's Exhibit 19 and Exhibit 20 and shall contain specific reference to the Mason property as Lot 6.

Cost of this appeal assessed to appellant.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

GLASSER, ABOOD and MELVIN L. RESNICK, JJ., concur.