SPITZER HARDWARE & SUPPLY CO., APPELLEE, *v.* DEVER ET AL., APPELLANTS.

(No. 1752—Decided June 1, 1967.)

*Messrs. Horan, Ashenbach & Tattersall,* for appellee.
*Messrs. Wilcox & Wilcox,* for appellants.

DOYLE, J. This appeal brings for review the evidence and a decree of the Court of Common Pleas of Lorain County reforming a deed to real property given by the Spitzer Hardware &

Supply Company (appellee) to John P. and Winifred A. Dever, husband and wife (appellants).

For convenience, the appellee will be referred to as Spitzer, and the appellants as Devers.

It appears that Spitzer allotted open lands owned by it and caused a plat thereof to be recorded in the County Recorder's office in the Lorain County Court House. This plat accurately showed the various lots and sublots comprising the allotment, with their abutments on streets and, in some instances, on a lake. Sublot 206, the lot in controversy, was shown on the plat as having a south frontage of 139.43 feet on the lake. Prior to the sale of sublot 206 to the Devers, Spitzer, under threat by the state of Ohio of eminent domain proceedings, conveyed a portion of the allotted land to the state for highway purposes. Subsequent thereto, another plat was prepared changing the boundaries of some of the lots, including the controversial sublot 206, whose southern frontage on the lake was changed from 139.43 feet to 119 feet. This plat was not recorded, nor was the original plat changed of record. Spitzer built a house on sublot 206, and, pursuant to negotiations with the Devers, an agreement was made for a sale and purchase of sublot 206 without any mention of the dimensions of the lot.

A Mr. Jack Groves, sales manager for Spitzer, then ordered the preparation of a deed by Spitzer's attorneys, one of whom had been Spitzer's counsel for many years and who had acted, for a time, as an officer of the company. The attorneys had not been told, nor were they aware, of any change in the allotment plat; and from a copy of the original and recorded plat (Vol. 12, p. 58, record of plats), which they had in their office, a deed was prepared and executed, containing the original description and boundaries of sublot 206 as they appeared on the recorded plat.

Specific language in the executed deed appears as follows:

"Situated in the township of Carlisle, county of Lorain, and state of Ohio: and known as being all of sublot No. 206 in Brentwood Allotment No. 5 as *recorded in* Lorain County Records of Plats, Volume 12, *page 58* * * *." (Emphasis ours.)

The warranty deed from Spitzer to Devers was filed for record on July 15, 1963, and shortly thereafter, on the same day, a mortgage deed conveying the same described property to the

National City Bank of Cleveland was recorded. The property was mortgaged by the Devers to secure funds to pay the vendor, Spitzer. The Devers took physical possession of the property several days later, on July 22, 1963. They are presently the owners and occupiers of the property.

We continue the sequence of events by observing that at the time of the above transactions Spitzer had not sold and, consequently, owned the adjacent sublot No. 207, as well as other sublots in the allotment, and several months later, in the winter of 1963-1964, constructed a house on sublot 207. Spitzer discovered, when building this house, that it encroached for a distance of about two feet on sublot 206 as conveyed to the Devers. Spitzer thereupon requested Devers to convey back to it a portion of sublot 206, asserting that the plat had been revised in 1961 (but not recorded) before its conveyance of sublot 206 to the Devers and there should have been an exception in the deed in conformity to the unrecorded revision of lot boundaries as appears in the revised unrecorded plat.

The Devers refused to comply with Spitzer's request, and the instant action was thereupon instituted praying for an order that the deed of conveyance for sublot 206, as recorded in the Lorain County records of deeds, "be corrected so as to express the true meaning of the parties thereto."

Pursuant to trial, the Court of Common Pleas entered its judgment reforming the deed as requested by Spitzer; and it is from this judgment that the Devers have appealed for trial *de novo.*

We recognize the law which must be applied to the facts before us as those rules of equity which are applied to the reformation of deeds because the relief here sought, as stated above, is the correction of a deed "to express the true meaning of the parties thereto."

The rule generally applied throughout the country is stated, with supporting authorities, in 47 Ohio Jurdisprudence 2d 140, Mutuality of Mistake, Section 16, as follows:

"When no question of fraud, bad faith or inequitable conduct is involved and when the right to reform an instrument is based solely on a mistake, it is generally necessary that the mistake be mutual and that both parties understood the contract to be as the petition alleges it ought to have been and as in fact

it was, except for the mistake. This is so whether the mistake is one of fact or of law; in either case the mistake must be mutual, not that of one of the parties alone * * *."

In *Stewart* v. *Gordon*, 60 Ohio St. 170, the law of this state is pronounced to be:

"2. No reformation of an instrument can be made that does not conform to the intention of both parties; the court can not by reformation make a new contract."

See, also, 45 American Jurisprudence 617, Section 55.

In 76 Corpus Juris Secundum 361, Reformation of Instruments, Section 28, appears the following text with supporting authorities from many states:

"Although no fraud exists, where there is a valid agreement between the parties and an instrument failing accurately or fully to express it, or failing to express their intentions, because of a mistake which is shown to be mutual, reformation is authorized, provided innocent third persons will not be unfairly affected by such reformation. It must appear that by reason of the mistake both have done what neither intended, that is, the contract must be written in terms which violate the understanding of both parties, and the mistake must be in reference to the same matter.

"In all cases, it is necessary to make clear the mutuality of the mistake * * *."

In stressing the requirement of mutual mistake in the reformation of deeds, we are by no means saying equitable relief may not be available under certain circumstances for a unilateral mistake. However, in these circumstances, the relief is generally awarded through the channel of rescission of the contract. Due to the many guidelines which must be followed in cases of this character, we will not pursue the equitable principles further, except to refer to the annotation in 59 A. L. R. 809, titled "Unilateral mistake as basis of bill in equity to rescind the contract."

It is argued by Spitzer that the new unrecorded plat "was the basis for the making of a sales brochure" which was posted inside the house on sublot 206, and that after being shown the brochure, and a copy of the revised plat, the Devers entered into a contract for the purchase of the house on sublot 206. Despite the fact that lot dimensions were not mentioned in the contract

of purchase, Spitzer argues that the Devers knew the size of sublot 206 from the above and other sources and, consequently, there was a mutuality of mistake in the deed subsequently executed. This claim was denied by the Devers. Mr. Dever testified that he called Groves, the sales manager for the property, for the dimensions of sublot 206 for the purpose of getting a mortgage loan, and he took the lot dimensions given him to the bank, and they were incorporated in the mortgage deed. These dimensions were the dimensions of sublot 206 as they appear on the recorded plat.

This court has accorded the litigants now before us a trial *de novo* and, as a consequence, we must weigh the evidence and determine whether the degree of proof has been met by the petitioners. We specifically find no evidence of any character indicating fraud, bad faith or inequitable conduct.

With these conclusions, we then turn to the question of mutuality of mistake. In our examination of the total evidence before us, we do not find a mistake shared by, or participated in by, both parties; we do not find that the parties labored under the same misconception in respect to the boundaries of sublot 206, thereby intending, at the time of the execution of the deed in question, to say one thing and, by mistake, expressing another, so that the executed deed does not express the intent of either of the parties. We find no evidence indicating that the Devers intended to obtain by purchase any other sized property than that described in the mortgage deed given to the bank, and as shown in the only recorded plat of the allotment.

With our conclusions as expressed above, we find it unnecessary to discuss the position of the National City Bank of Cleveland, an innocent third-party mortgagee.

Decree for the defendants-appellants here.

*Judgment for defendants.*

BRENNEMAN, P.J., and HUNSICKER, J., concur.